IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| VALARIE MCGEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 2:12-cv-02198-JTF-tmp |
| | ) |
| TECHNICOLOR DISTRIBUTION, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
ORDER OF DISMISSAL**

Before the Court is Defendant Technicolor Videocassette of Michigan, Inc.'s, incorrectly

sued as Technicolor Distribution, Inc.,[1] Motion for Summary Judgment, filed on July 5, 2013.

(D.E. #28).  On September 3, 2013, Plaintiff Valarie McGee filed her Response to Defendant's

Motion for Summary Judgment.  Defendant filed its Reply in Support of its Motion on

September 27, 2013.  (D.E. #41).  For the following reasons, Defendant's Motion for Summary

Judgment is GRANTED in part and DENIED in part, and the case is DISMISSED with

prejudice.

I.    **BACKGROUND**

Plaintiff, Valarie McGee, a black female, is a high-school graduate, who attended

management courses and worked for the Memphis Mental Health Institute for nineteen years,

prior to her employment with Defendant.  Defendant, Technicolor Videocassette of Michigan,

---

[1] The Clerk is directed to modify the docket to reflect Defendant, Technicolor Videocassette of Michigan, Inc., as
the proper Defendant in this case.

1

Inc. ("Technicolor"), hired Plaintiff on January 18, 1999.  In her twelve years of employment

with Defendant, Plaintiff held such positions as Material Handler, Lead Material Handler,

Customer Service Department Supervisor, and Production Planning Supervisor.  Plaintiff alleges

that she was an "excellent employee" and performed all her duties well.  (D.E. #1, ¶ 10).

In 2011, Defendant decided to reduce its workforce, resulting in the lay-off of several

employees.  Employees were offered a severance package in exchange for signing a general

release form that waived all claims against Defendant.  Defendant laid off employees based on

seniority and performance evaluations.  Plaintiff contends that, on July 12, 2011, Defendant laid

her off, while a less qualified, less experienced, white male, Larry John Turnmire, was retained.

Plaintiff alleges that Turnmire held the same position as she, but was paid a higher salary, even

though he had less experience and years working for Defendant.

Defendant denies Plaintiff's allegations.  Defendant argues that: 1) Turnmire did not hold

the same position as Plaintiff, and 2) Plaintiff was not chosen to be laid off, but rather she

volunteered to be laid off.  First, Defendant argues that, before the end of her employment,

Plaintiff held the title of Production Planning Supervisor and earned a salary of $48,592.20.

Contrastingly, Turnmire held the title of Scheduling Supervisor—a position higher than

Plaintiff's position—and earned a salary of $50,000.00.[2]

Second, Defendant contends that, on July 12, 2011, Defendant informed Plaintiff that

another employee would be laid off in her department.  Defendant alleges that once Plaintiff

heard about the severance package the other employee would receive, she volunteered to be laid

off.  Because of her request, Defendant offered Plaintiff a severance package of $21,773.00, plus

benefits.  Plaintiff's severance package was wholly contingent upon her agreeing to, and signing,

---

[2] Plaintiff later admitted that Turnmire held the position of Scheduling Supervisor, but she argues that "he never performed scheduling supervisor duties . . . and he continued to perform production control supervisor duties, while [another senior supervisor] performed the scheduling supervisor duties."  (D.E. #38, at 4).

the Agreement and General Release ("Release").  On July 12, 2011, Plaintiff was presented with

the Release, which stated in relevant part:

### AGREEMENT AND GENERAL RELEASE

*          *          *          *

2. Termination of Employment.  Employee's employment with
Technicolor shall end on July 13, 2011 ("**Employee's Layoff Date**").

3. Severance Payments and Benefits.  In consideration for Employee's
Execution of this Agreement and continuing compliance with the promise
made herein, Technicolor shall provide Employee with the payments and
benefits described in this Section

(a)  Technicolor shall pay to Employee a severance payment
in an amount equal to 24 weeks at Employee's Base Weekly
Pay, for a total payment of $21,773.00, less applicable taxes
and withholdings (the "Severance Payment").

(b)  Provided Employee elects continued healthcare coverage
under COBRA and continues to pay the premium paid
by active employees of the Company for the same coverage,
Technicolor shall pay the remaining COBRA premium
(full COBRA premium less that employee-paid premium)
for continued coverage for Employee and Employee's
dependents (if applicable) under Technicolor's health,
dental and/or vision plains (as applicable) for a period
of 5 months form the date the employee's coverage would
have otherwise ended.  Employee's participation in the
Company's employee benefit shall be in accordance with
the terms and subject to the conditions applicable to
those plans.

4. Final Wages and Vacation Payment.  Technicolor shall pay Employees
for Employee's final wages, including any accrued but unused vacation
pay through Employee's Layoff Date. . . .  Employee shall not be eligible
for or receive any other payments or accrue any further benefits under
Technicolor's vacation program or any other program that provides
employees with paid time off from work.

5. No other Compensation.  Employee understands and agrees that
Employee shall not be eligible for nor receive any compensation, benefits,
or payments from Technicolor or any other entity or person released
herein as specifically set forth in this Agreement.

3

6. <u>Release.</u>  In consideration for the payments and benefits . . . Employee herby knowingly and voluntarily releases and forever discharges the company [or its affiliates, etc.] from any and all claims, known and unknown, that Employee [or her heirs, etc.] have or may have arising out of, or related to: (a) Employee's employment with the Company or the termination of that employment, including, but not limited to, any alleged violation of: [. . .] Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code [. . .] any local, state or federal law, regulation or ordinance, including but not limited to any civil rights, fair employment, or anti-discrimination law, regulation or ordinance; any public policy, contract, tort, or common law; and any claim for costs, fees, or other expenses including attorneys' fees incurred in these matters; or (b) any other matter occurring prior to the Effective Date of this Agreement.

7. <u>Additional Release</u>.  Employee understands and agrees that the Released Claims include not only claims presently known to Employee, but also all unknown and unanticipated claims, rights, demands, actions, obligations, liabilities, and causes of action of every kind and character that would otherwise come within the scope of the previous Section. Employee understands that Employee may hereafter discover facts different from what Employee now believes to be true, which if known, could have materially affected this Agreement.  Employee nevertheless waives any claims or rights based on different or additional facts [. . .].

*            *            *            *

11. <u>Notices.</u>  This Agreement constitutes written notice and advice of the following:

    (a) Employee should consult with an attorney prior to executing this Agreement.

    (b) Employee has forty-five (45) days (the "**Consideration Period**") from the date Employee first receives this Agreement to consider this agreement and to sign it if Employee chooses to do so [. . .].  If Employee does not sign this Agreement within the Consideration Period, it shall be null and void and Employee shall not receive the payments and benefits described in Section 3.

        (c) Employee has seven (7) days following the date Employee signs this Agreement (the "Revocation Period") during which Employee may revoke Employee's Acceptance of this Agreement [. . . ].

4

(d) This Agreement does not waive rights or claims that may rise after the date Employee signs it.

(e) Employee's layoff is the result of reduction in force within Technicolor Home Entertainment Services, Memphis campus.  Employees were selected for layoff based on length of service or evaluation scores.

\*          \*          \*          \*

12. <u>No Recovery</u>.  Nothing in this Agreement is intended or shall be construed to prohibit Employee from filing or making any charge, complaint or action with any local, state, or federal government agency,  including but not limited to the Equal Employment Opportunity Commission or the U.S. Department of Labor.  Employee agrees, however, that Employee shall not be eligible for or receive any relief or recovery, including costs and attorney's fees, in connection with any charge, complaint or action that Employee files or that is filed on Employee's behalf against any of the Releases based on events occurring prior to my execution of this Agreement.

\*          \*          \*          \*

**EMPLOYEE HAS ELECTED FREELY AND VOLUNTARILY TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES SET FORTH IN THIS AGREEMENT, AND TO RECEIVE THEREBY THE PAYMENTS AND BENEFITS DESCRIBED IN SECTION 3 ABOVE.  EMPLOYEE UNDERSTANDS THAT, BY SIGNING THIS AGREEMENT, EMPLOYEE IS AGREEING TO WAIVE, SETTLE AND RELEASE CLAIMS THAT EMPLOYEE HAS OR MIGHT HAVE AGAINST TECHNICOLOR ND ANY OF THE RELEASES.**

(D.E. #30-2, at 57-64).

On August 4, 2011, Plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission (EEOC).  Plaintiff alleged violations of discrimination

5

based on race and equal pay.[3]  Plaintiff received a Notice of Right to Sue by the EEOC on

December 6, 2011.  Subsequently, on March 11, 2012, Plaintiff filed a Complaint alleging

wrongful termination and employment discrimination on the basis of race, sex, and retaliation in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*,

42 U.S.C. § 1983, and the First, Fifth, and Fourteenth Amendments.  (D.E. #1).  Specifically,

Plaintiff asserts that during her employment she was subjected to sexual and racial harassment

and retaliatory tactics by her various managing supervisors.  She contends that one of her

managers insinuated, via email to other employees, that she "needed to have some form of

personal or sexual contact with another employee to relieve her stress."  (D.E. #1, ¶ 15).  Due to

the manager's actions, Plaintiff argues that she was emotionally distressed and was subjected to a

hostile work environment.  Plaintiff states that she continually complained about the

inappropriate harassment, but no action was ever taken.  Plaintiff seeks relief from the Court in

the form of back pay, front pay, and compensatory and punitive damages against Defendant.

Defendant filed its Answer to the Complaint on July 5, 2012, denying all allegations

against it.  (D.E. #8).  On July 5, 2013, Defendant filed a Motion for Summary Judgment.  (D.E.

#28).  In support of its Motion, Defendant argues and presents evidence that: 1) Plaintiff released

all her claims when she accepted the $21,773.00, plus benefits package, in consideration for

Plaintiff's execution of the Release form; 2) Plaintiff cannot prevail on her gender and race

discrimination claims; 3) Plaintiff cannot prevail on her sexual and racial harassment claims; 4)

Plaintiff cannot prevail on her retaliation claims; 5) Plaintiff improperly asserts U.S.

---

[3] In the Charge of Discrimination filed by Plaintiff she specifically states that, "John Turnmire (White male), Production Planning Supervisor (same as me), less qualified with only approximately six years experience, was paid more money than me, and was allowed to keep his job; whereas, my Manager, Linda Curry (White), laid me off on July 13, 2011, because of lack of work.  Linda did not use the seniority rule.  I believe I have been discriminated against because of my race (Black), in violation of Title VII of the Civil Rights Act of 1964, as amended and because of my sex (female), in violation of the Equal Pay Act of 1963, as amended."  (D.E. #30-2, at 65).

Constitutional claims and a 42 U.S.C. § 1983 claim against Defendant.[4]  Specifically, Defendant

urges the Court to find that Plaintiff's claims were effectively waived by the executed Release,

since Plaintiff admits that she: 1) understood the Release; 2) was not forced to sign the Release;

and 3) understood that her severance payment was contingent upon her signing the Release.

(D.E. #30, at ¶ 23).

A Status Conference was held before this Court on August 23, 2013 (D.E. #32), in which

the Court directed Plaintiff to file her response to Defendant's Motion for Summary Judgment,

by close of business on August 23, 2013.  Plaintiff failed to file her response, and the time to

respond had elapsed.

On August 26, 2013, the Court entered a Show Cause Order, directing Plaintiff to file her

response to Defendant's Motion for Summary Judgment by close of business August 28, 2013.

(D.E. #35).  The Order also notified the Plaintiff that "[f]ailure to respond to this order or to

show good cause [would] result in the granting of the Motion [for Summary Judgment] pursuant

to Fed. R. Civ. P. 41(b)."  On August 28, 2013, Plaintiff responded to the Court's Show Cause

Order and requested an extension of time, until August 30, 2103, to file her response.  (D.E.

#36).  In her Response to the Order to Show Cause, Plaintiff states that:

> 2. That counsel has completed the substance of the Motion for
> Summary Judgment; however, there are affidavits from employees
> of Technicolor, which Plaintiff intends to submit in support of
> Plaintiff's response.
>
> \*      \*      \*
>
> 4. That counsel has secured all of the necessary affidavits with the
> exception of one, which is from a witness who now resides in
> the state of Wisconsin.  Plaintiff has spoken with the witness
> regarding the time sensitivity of the affidavit.  That Plaintiff has
> been assured that he will receive the affidavit by Friday,
> August 30, 2013.

---

[4] Defendant argues that because it is not a state actor, Plaintiff inappropriately asserts U.S. Constitutional claims and a 42 U.S.C. § 1983 claim against Defendant.

*     *     *

7.     That Plaintiff requests until Friday, August 30, 2013 to file the Response to Defendant's Motion for Summary Judgment or in the alternative, allow Plaintiff until Thursday, August 29, 2013 to file the substance of her response and allow Plaintiff to supplement her response once the affidavit from the out of state witness is received.

The Court granted Plaintiff's request for an extension of time, and allowed Plaintiff to file her Response by close of business on Friday, August 30, 2013.  (D.E. #37).  Again, the Court notified the Plaintiff that "[n]o additional time will be granted by the Court.  Once more, the Court emphasizes to Plaintiff that failure to respond to Defendant's Motion [for Summary Judgment], by August 30, 2013, will result in the granting of the Motion, pursuant to Fed. R. Civ. P. 41(b)."  Plaintiff did not file her Response until September 3, 2013.  Plaintiff gives no explanation for the untimeliness of her filing.  In her Response, Plaintiff argues that she:  1) did not knowingly and voluntarily execute the Release; 2) has established valid claims under Title VII; and 3) has established valid claims under Tennessee Human Rights Act ("THRA") and Title VII.

Specifically, Plaintiff argues that, "[t]he sole reasons she asked to be laid off was because she was being forced to second or third shift and she could not work either because of her husband's illness."  (D.E. #38, at 4).  Plaintiff further alleges: 1) she was told she had to sign the Release the same day she received it on July 12, 2011; 2) she was not told she had a right to consult an attorney; 3) she was not told she could take the documents home for review; 4) she did not have an opportunity to read the terms of the Release; and 5) she was not told that she would be waiving her rights of any legal claims.

8

On September 27, 2013, Defendant filed its Reply to Plaintiff's Response to the Motion for Summary Judgment. (D.E. #41). Defendant argues that its Motion for Summary Judgment should be granted because Plaintiff: 1) released all her claims and ratified the Release by retaining her severance payment; 2) cannot establish a prima facie case for her gender and race discrimination claims or her retaliation claims; 3) cannot establish a prima facie case for her sexual and racial harassment claims; 4) failed to comply with the Court's Orders and should be sanctioned under Fed. R. Civ. P. 41(b).

## II.   LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate if the moving party can establish there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The threshold inquiry in determining if the party is entitled to summary judgment is whether a finder of fact could reasonably find in favor of either party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 259 (1986). A party, asserting that a fact cannot be or that a fact is genuinely disputed, must support his assertion by citing to specific parts in the record, and the court must examine all factual evidence in the light most favorable to the non-moving party. *See* Fed. R. Civ. P 56(c); *See McLean v. 988011 Ontario Ltd*., 224 F.3d 797,800 (6th Cir. 2000)(citing *Northland Ins. Co. v. Guardsman Prods., Inc.,* 141 F.3d 612, 613 (6th Cir. 1998)).

The non-moving party can survive a motion for summary judgment by establishing "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Although the non-moving party has the burden of producing rebuttal evidence, the non-moving party can simply overcome summary judgment by producing evidence from the pleadings, depositions, and any other documents in the record that establish a genuine issue. *See*

*Celotex,* 477 U.S. at 324.  Nevertheless, the non-moving party must prove more than a "mere existence of some alleged factual dispute between the parties" and must provide facts that are material to the outcome of the suit in order to survive the summary judgment motion.  *Anderson,* 477 U.S. at 247-248.

> If the non-moving party fails to support the facts asserted, the court has discretion to:

>> (1) give an opportunity to properly support or address the fact;
>> (2) consider the fact undisputed for purposes of the motion;
>> (3) grant summary judgment if the motion and supporting materials—
>> including the facts considered undisputed—show that the movant
>> is entitled to it; or
>> (4) issue any other appropriate judgment.

Fed. R. Civ. P. 56(e).

### B.  Failure to Prosecute

Under Fed. R. Civ. P. 41(b), a defendant may move to dismiss a case or certain claims against it, "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order."  A dismissal under Fed. R. Civ. P. 41(b) serves as an adjudication on the merits.

The Sixth Circuit evaluates the aptness of a Rule 41(b) dismissal through four factors: "'1) whether the party's failure is due to willfulness, bad faith, or fault; 2) whether the adversary was prejudiced by the dismissed party's conduct; 3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and 4) whether less drastic sanctions were imposed or considered before dismissal was ordered.'"  *Richter v. Am. Aggregates Corp*., 552 F. App'x 253, 259 (6th Cir. 2013)(quoting *Knoll v. Am. Tel. & Tel. Co*., 176 F.3d 359, 363 (6th Cir. 1999)).  Although district courts are given considerable discretion "in managing its dockets and determining whether a delay results in unnecessary burdens on the court and on opposing parties," Rule 41(b) dismissals are not to be taken lightly.  *Id.* Rule 41(b) dismissals are "'harsh

sanction[s] which the court should order only in extreme situations showing a clear record of

contumacious conduct by the plaintiff.'"  *Id* (quoting *Wu v. T.W. Wang, Inc*., 420 F.3d 641, 643

(6th Cir. 2005).

### III.   ANALYSIS

Plaintiff presents claims of race and gender discrimination under Title VII, hostile work

environment under Title VII , and retaliation under the THRA and the First, Fifth, and

Fourteenth Amendments.  Notwithstanding Plaintiff's factual allegations, this Court finds that,

because of the July 12, 2011 Release, Plaintiff has validly released her claims, and, therefore, her

claims against Defendant are dismissed.  Consequently, Defendant's Motion for Summary

Judgment is GRANTED.  The Court also finds that Plaintiff failed to timely respond to

Defendant's Motion for Summary Judgment and to this Court's Order to Show Cause.

#### A.  Plaintiff's Claims were Validly Released by the Executed Release

The Sixth Circuit has often recognized employers and employees ability to negotiate a

release of Title VII claims, when the waiver is knowingly, voluntarily, and intelligently

executed.  *See E.E.O.C. v. SunDance Rehabilitation Corp*., 466 F.3d 490, 499 (6th Cir. 2006).  In

doing so, the courts have recognized five factors that can determine whether a release of Title

VII claims have been properly executed.  The court will look to:

> (1) plaintiff's experience, background, and education;
> (2) the amount of time the plaintiff had to consider whether to sign the waiver,
>     including whether the employee had an opportunity to consult with a lawyer;
> (3) the clarity of the waiver;
> (4) consideration for the waiver; and
> (5) the totality of the circumstances

*Adams v. Phillip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir. 1995).

However, the Sixth Circuit has explicitly prohibited employers and employees from

waiving an employee's right to file charges with the EEOC.  These types of releases are

considered "void and unenforceable against public policy." *SunDance Rehabilitation Corp.*, 466

F.3d 490, 498.  Thus, while an employee may not release her to right to file discrimination

charges with the EEOC, she can release her right to recover in a private suit.  *See id*, at 498-499.

Here, Defendant argues that the merits of Plaintiff's Complaint should not be considered

because Plaintiff effectively released all her claims against Defendant when she executed the

Release and retained her severance payment of $21,773.00, plus benefits.  Defendant contends

that under the five-factor test outlined in *Adams*, it is evident that the Release was knowingly and

voluntarily executed.  Defendant points to the following factors: 1) Plaintiff is a high-school

graduate, who attended several management courses, worked for the Memphis Mental Health

Institute for nineteen (19) years, and also worked for Defendant for twelve (12) years; 2) Plaintiff

was given a forty-five (45) day Consideration period and a seven (7) day Revocation Period; 3)

Plaintiff was put on notice, by the Release, that she should consult an attorney before signing the

Release; 4) the Release was written in plain and unambiguous language and included capitalized

and bolded sections that detailed Plaintiff's release of her claims;[5] 5) Plaintiff was given

$21,773.000, plus benefits, as severance for her consideration of the Release; and 6) Plaintiff

volunteered to be laid off, admits that she understood her employment would end if she signed

the Release, and retained the severance payment, even after filing her Complaint.

---

[5] This Court specifically draws its attention to the capitalized and bolded section at the end of the Release and above
Employee's signature, acknowledging her agreement with the Release:

> **EMPLOYEE HAS ELECTED FREELY AND VOLUNTARILY TO EXECUTE**
> **THIS AGREEMENT, TO FULFILL THE PROMISES SET FORTH IN THIS**
> **AGREEMENT, AND TO RECEIVE THEREBY THE PAYMENTS AND**
> **BENEFITS DESCRIBED IN** [the Severance Payments and Benefits Section]**.**
> **EMPLOYEE UNDERSTANDS THAT, BY SIGNING THIS AGREEMENT,**
> **EMPLOYEE IS AGREEING TO WAIVE, SETTLE AND RELEASE CLAIMS**
> **THAT EMPLOYEE HAS OR MIGHT HAVE AGAINST TECHNICOLOR**
> **AND ANY OF THE RELEASE.**

(D.E. #30-2, at 63).

Conversely, Plaintiff alleges that she was under duress when she executed the Release. She argues that: 1) she was distressed when she found out she would be forced to third shift, and 2) she was forced to sign the Release the same day she received it.  Plaintiff also argues that, in addition to the duress and coercion she experienced, the Release was not knowingly and voluntarily executed under the *Adams* five factor test.  Specifically, Plaintiff alleges that: 1) she has no formal education beyond high school; 2) she did not read the Release, did not understand the Release, and was not told she was releasing all claims should we have against Defendant; 3) she received and executed the document on the same day; 4) she was never told or allowed to take the document for an attorney's review; and 5) the Release was not understandable because of the footnotes and complicated legalese.

In order to examine Plaintiff's duress claims, there must be evidence of an "unlawful or 'wrongful act or threat' that overcomes the free will of the victim*." Gascho v. Scheurer Hosp.*, 400 F. App'x 978, 982 (6th Cir. 2010).  In analyzing such a claim, the court must be cognizant whether the duress claim rises to the level of an improper or illegal threat, because the court recognizes that "[a]ll bargaining . . . comes with implicit economic and psychological pressures." *Id*. at 983.  Thus, if no disproportionate exchange of benefits is present, duress will not be available as a defense.[6]

In the present case, the Court is unconvinced that Plaintiff was coerced or under duress in executing the Release.  Not only are Plaintiff's allegations unsubstantiated by the record, but also Plaintiff admitted in her deposition that she was not forced to execute the Release.  It is evident, from the facts in the record and Plaintiff's own statements that the Release was voluntarily and

---

[6] The *Gascho* Court also appropriately points to the Restatement (Second) of Contracts § 176 cmt. a (2010) when addressing the issue of duress: "As the Restatement reminds us, '[a]n ordinary offer to make a contract commonly involves an implied threat by one party, the offeror, not to make the contract unless his terms are accepted by the other party, the offeree."  400 F. App'x 983.

knowingly executed.  Even if there was some evidence of duress or distress at the signing of the

release, Plaintiff still did not avail herself of the seven-day revocation period. Therefore,

Plaintiff's claims are dismissed, because she effectively released all her claims against Defendant

when she executed the Release.

Because of the validity of the Release, this Court is not obligated to examine the merits of

Plaintiff's claims.  Nevertheless, if the Court were to examine the merits of her claims, Plaintiff

would be unable to resist the Motion for Summary Judgment.  Plaintiff has provided no material

evidence that would support her allegations against Defendant.[7]  Plaintiff's allegations must be

more than simply conclusory and speculative assertions.  *See Lujan v. Nat'l Wildlife Fed'n*, 497

U.S. 871, 902 (1990)(stating that "'conclusory' allegations unsupported by 'specific' evidence

will be insufficient to establish a genuine issue of fact").  The standard for summary judgment is

clear: the court needs more than "general averments [to] embrace the 'specific facts' needed to

sustain the complaint."  *Lujan,* 497 U.S. at 888.  Without more evidence, the Court has no

alternative but to find that all of Plaintiff's claims are insufficient to overcome Defendant's

Motion for Summary Judgment.[8]  Therefore, the Court GRANTS Defendant's Motion for

Summary Judgment.

### B.  Plaintiff Untimely Responded to Defendant's Motion for Summary Judgment

Although the Court dismisses Plaintiff's claims based upon the valid execution of the

Release and the insufficiency of Plaintiff's claims to overcome Defendant's Motion for

---

[7] Plaintiff references exhibits in her Response, but those exhibits are not attached to her Response and are not
present in any part of the record.  See e.g., "Plaintiff's Response to Defendant's Motion for Summary Judgment."
(D.E. #38, at 4-5)

[8] Although Plaintiff does not address or present evidence in support of her First, Fifth, and Fourteenth Amendment
claims or her § 1983 claim, the Court will also briefly examine these claims as well.  Defendant properly argues in
its Reply (D.E. #41, at 2, n. 1) that Plaintiff has abandoned these claims, pursuant to the court's holding in *Hicks v.
Concorde Career College*, 449 F. App'x 484, 487 (6th Cir. 2011)("The district court properly declined to consider
the merits of [plaintiff's hostile work environment] claim because [plaintiff] failed to address it in either his response
to the summary judgment . . .").  Thus, in addition to Plaintiff's discrimination, hostile work environment, and
THRA claims, Plaintiff's U.S. Constitutional and § 1983 claims are dismissed.

Summary Judgment, the Court will also examine the untimeliness of Plaintiff's responses to both

Defendant's Motion and this Court's Orders directing Plaintiff to respond.

Local Rule 56.1(b) gives the party opposing the motion for summary judgment twenty-

eight (28) days to file a response.  As stated above, Defendant filed its Motion for Summary

Judgment on July 5, 2013.  Pursuant to L.R. 56.1(b), Plaintiff had until August 2, 2013 to file her

Response to the Motion.  As of the August 23, 2013 Status Conference, Plaintiff had yet to file

her Response.  After hearing from Plaintiff during the status conference, the Court directed

Plaintiff to file her Response by the close of business on August 23, 2013.  Plaintiff did file her

Response.  On August 26, 2013, the Court entered an Order to Show Cause, which ordered

Plaintiff to "show cause within two business days . . . or Wednesday, August 28, 2013, why

Defendant's Motion for Summary Judgment should not be granted.  Failure to respond . . . will

result in the granting of the Motion pursuant to Fed. R. Civ. P. 41(b)."  (D.E. #35, at 1-2).

On August 28, 2013, Plaintiff filed her Response and requested an extension "until

Friday, August 30, 2013 to file the Response to Defendant's Motion for Summary Judgment or

in the alternative, allow Plaintiff until Thursday, August 29, 2013 to file the substance of her

response and allow Plaintiff to supplement her response once the affidavit from the out of state

witness is received."  (D.E. #36, at 2).  This Court gave Plaintiff an extension until the close of

business on August 30, 2013 to file her Response and stated that, "[n]o additional time will be

granted . . . ."  (D.E. #37, at 2).  Plaintiff did not file her Response until September 3, 2013 and

did not provide a reason for her delayed Response.  (D.E. #38).

Pursuant to the above facts, this Court finds that all four factors, identified in *Richter*, to

determine whether dismissal under Rule 41(b) is appropriate are present in this case:

1) Plaintiff's failure to prosecute is due to the untimely filing of her Response to Defendant's

Motion for Summary Judgment; 2) Defendant was prejudiced by Plaintiff's conduct, because Plaintiff did not file a record of affidavits with her Response, which caused Defendant to be unable to appropriately adjudicate the merits of the case; 3) the Court warned Plaintiff that her untimeliness could lead to the granting of Defendant's Motion, and consequently, the dismissal of this case; and 4) this Court granted Plaintiff three extensions of time to file her Response, showing that this Court employed less drastic measures than dismissal.   Although Plaintiff did eventually file her Response, it was four (4) days beyond the deadline this Court issued, and there was no explanation as to the tardiness of the filing.

### C.  Defendant's Motion to Strike is Improper

Fed. R. Civ. P. 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  A "pleading," as defined by Fed. R. Civ. P. 7(a) is: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."  Generally, motions to strike are disfavored by the court.  *See Scott v. The Dress Barn, Inc.*, 2006 WL 870684, *1, No. 04-1298-T/AN (W.D. Tenn. Mar. 31, 2006).  Courts in this district have specifically clarified that such filings as affidavits and exhibits that accompany pleadings are not subject to Fed. R. Civ. P. 12(f).  *See Scott*, 2006 WL 870684, *1 (C.f. *Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 374 (6th Cir. 2006)). Additionally, courts have failed to recognize that motions or responses to motions constitute a "pleading" under Fed. R. Civ. P. 7(a).  *See Rouse v. Caruso*, 2007 WL 209920, *2, No. 06-10961-DT (E.D. Mich. Jan. 24, 2007).

In its Reply to Plaintiff's Response to Motion for Summary Judgment, filed on

September 27, 2013, Defendant argues that Plaintiff's facts are unsupported by any citations to

the record and do not comport to the requirements set forth in Fed. R. Civ. P. 65(c)(1) or L.R.

56.1(b).  Defendant asserts that, because Plaintiff failed to comply with the appropriate

evidentiary rules, the facts she allege should be stricken from the record.  Plaintiff did not

respond to Defendant's Motion.  Although the Court agrees that Plaintiff's Response to

Defendant's Motion to Summary Judgment is wholly unsubstantiated by any material fact and

the facts asserted are noncompliant to both federal and local evidentiary rules, Plaintiff's facts

will not be stricken, because her Response to Defendant's Motion to Summary Judgment does

not constitute a pleading under Fed. R. Civ. P. 7(a).  See Fed. R. Civ. P. 12(f).  Therefore,

Defendant's Motion to Strike is DENIED.

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is

GRANTED in part and DENIED in part.  However, because this Court found that Plaintiff's

claims have been waived by the executed Release and are without merit, this case is

DISMISSED with prejudice.

IT IS SO ORDERED this 28th day of January, 2014.


                                        BY THIS COURT:


                                        *s/John T. Fowlkes, Jr.*___
                                        JOHN T. FOWLKES, JR.
                                        United States District Judge

17